**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| EVERETTE EYRE,<br><br>              Plaintiff,<br><br>   v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>              Defendant. | CASE NO. EDCV 18-1481 SS<br><br>**MEMORANDUM DECISION AND ORDER** |

**I.**

**INTRODUCTION**

Everette Eyre ("Plaintiff") brings this action seeking to reverse the decision of the Acting Commissioner of Social Security (the "Commissioner" or "Agency") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The parties consented pursuant to 28 U.S.C. § 636(c) to the jurisdiction of the undersigned United States Magistrate Judge. (Dkt. Nos. 10-11, 13). For the reasons stated below, the decision of the Commissioner is REVERSED, and this case

is REMANDED for further administrative proceedings consistent with this decision.

## II.

### THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents the claimant from engaging in substantial gainful activity and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing work previously performed or any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an Administrative Law Judge ("ALJ") conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

(2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

(3) Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four.

(4) Is the claimant capable of performing his past work? If so, the claimant is found not disabled. If not, proceed to step five.

(5) Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001); 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54. Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry. Id. at 954. If, at step four, the claimant meets his or her burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"), age, education, and work experience. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). The Commissioner may do so by the testimony of a vocational expert ("VE") or by

reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the grids"). Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). When a claimant has both exertional (strength-related) and non-exertional limitations, the grids are inapplicable and the ALJ must take the testimony of a VE. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000) (citing Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988)).

## III.

### THE ALJ'S DECISION

The ALJ employed the five-step sequential evaluation process and concluded that Plaintiff was not disabled within the meaning of the Act. (AR 15-27). At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since January 1, 2009, the alleged onset date. (AR 18). At step two, the ALJ found that through June 30, 2009, the date last insured, there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment. (AR 18). Thus, the ALJ determined that with regards to Plaintiff's DIB application, Plaintiff was not under a disability, as defined in the Social Security Act, from January 1, 2009, the alleged onset date, through June 30, 2009, the date last insured. (AR 19). With respect to Plaintiff's SSI application, the ALJ found at step two that Plaintiff's major degenerative disc disease of the cervical spine, status-post cervical fusion, and degenerative disc disease of the

4

lumbar spine are severe impairments.[1] (AR 19). At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of any of the listings enumerated in the regulations. (AR 21).

The ALJ then assessed Plaintiff's RFC and concluded that he can perform a full range of light work as defined in 20 C.F.R. § 416.967(b).[2] (AR 21). At step four, the ALJ found that Plaintiff is capable of performing past relevant work as a motor vehicle dispatcher, as actually and generally performed. (AR 26). Alternatively, based on Plaintiff's RFC, age, education, and work experience, the ALJ determined at step five that the grids direct a finding of "not disabled." (AR 26-27). Accordingly, the ALJ found that Plaintiff was not under a disability as defined by the

---

[1] The ALJ found that Plaintiff's alleged left shoulder pain, osteoarthritis, diabetes, high blood pressure, and perianal fistula are non-severe, as there is no indication in the record that they cause more than a minimal effect on Plaintiff's ability to perform basic work activities or lasted twelve continuous months, or more. (AR 19-20). The ALJ also found Plaintiff's alleged hernia non-medically determinable. (AR 21).

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 416.967(b).

Act since October 2, 2014, the date the application was filed. (AR 27).

## IV.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. "[The] court may set aside the Commissioner's denial of benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1097); see also Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720 (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)). It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." (Id.). To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-

21 (citing Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

**V.**

**DISCUSSION**

Plaintiff raises three claims for relief: (1) the ALJ failed to properly consider the opinion of Plaintiff's treating orthopedist; (2) the ALJ failed to fully and fairly develop the record; and (3) the ALJ erred in finding that Plaintiff's spinal conditions do not meet Listing 1.04. (Dkt. No. 18).

**A. <u>The ALJ's Reasons For Rejecting Dr. Puri's Opinions Are Not Supported By Substantial Evidence</u>**

Plaintiff's back pain began in 2002. (AR 398). He was rock climbing when he fell and hit his lower back against a rock. (AR 398). Three weeks later, he learned that he had broken his tailbone. (AR 398). Plaintiff's neck pain began in 2009 from playing football. (AR 398).

In September 2014, Plaintiff's primary care physician referred Plaintiff to Navdeep Loomba, M.D., a pain management specialist. (AR 398). Plaintiff reported that his pain, which he described as 3/10 up to 10/10, radiates from his neck into his head and from his low back into his hips, thighs, legs, and feet. (AR 398). He described the pain as aching, burning, sharp, throbbing, pressure, and pinching. (AR 398). Plaintiff's pain is aggravated by physical

activity, movement, changing positions, bending, lifting, sitting, and lying down, and is relieved by rest and standing. (AR 398). His current pain medications include Norco, gabapentin, meloxicam, baclofen, naproxen, and tramadol.³ (AR 399). Dr. Loomba reviewed an April 2014 MRI and conducted a physical examination. (AR 399-400). On examination, Plaintiff had an antalgic gait, tenderness in the lumbar paraspinal muscles, increased pain with flexion and extension of the spine, positive straight leg raising test on the left side, and tenderness in left lower quadrant. (AR 399-400). Dr. Loomba assessed lumbosacral radiculitis and herniated lumbar disc, recommended lumbar transforaminal epidural steroid injections, increased the Norco dosage to 10/325 mg, and continued baclofen and gabapentin. (AR 400).

Plaintiff received an epidural steroid injection on October 17, 2014. (AR 402). He reported some pain relief from the procedure, but complained that his pain medications are "not helping enough, causing side effects." (AR 402). On examination, Dr. Loomba noted antalgic gait, tenderness in paraspinal muscles, increased pain with flexion and extension of the spine, straight-leg test positive on left side, and tenderness in the left lower quadrant. (AR 403). He ordered a back brace and another epidural

---

³ Norco, which contains a combination of acetaminophen and hydrocodone, is an opioid pain medication. Neurontin (gabapentin) is used to treat neuropathic pain. Mobic (meloxicam) is used to treat pain or inflammation caused by rheumatoid arthritis and osteoarthritis. Gablofen (baclofen) is used to treat muscle spasm, pain and stiffness caused by spinal cord disorders. Aleve (naproxen) is used to treat pain or inflammation. Ultram (tramadol) is a narcotic-like pain reliever. <www.drugs.com> (last visited March 8, 2019).

8

steroid injection, discontinued Norco due to side effects, started Percocet,[4] and continued baclofen and gabapentin. (AR 403-04). Dr. Loomba performed the epidural steroid injection on December 18, 2014. (AR 405).

On January 20, 2015, Plaintiff reported minor pain relief from his recent epidural. (AR 407). He rated the severity of his pain as 4/10, aggravated by physical activity and movement and relieved somewhat with medications. (AR 407). On examination, Dr. Loomba found antalgic gait, tenderness in paraspinal muscles, increased pain with flexion and extension of the spine, straight-leg test positive on left side, and tenderness in left lower quadrant. (AR 408). Plaintiff declined more injections, reporting that they did not provide significant relief. (AR 408). Dr. Loomba discontinued Percocet due to side effects, stopped baclofen and gabapentin due to ineffectiveness, and started Fentanyl Patch.[5] (AR 408).

In May 2016, Plaintiff was referred to Rajiv Puri, M.D., a Board-certified orthopedic surgeon. (AR 449, 510). Plaintiff,

---

[4] Percocet, which contains a combination of acetaminophen and oxycodone, is an opioid pain medication used to relieve moderate to severe pain. <https://www.drugs.com> (last visited March 11, 2019).

[5] Fentanyl Patch is a strong opioid pain medication, which is used to treat moderate to severe chronic pain around the clock. Fentanyl patches are used when other pain treatments such as non-opioid pain medicines or immediate-release opioid medicines do not treat pain well enough or the patient cannot tolerate them. Fentanyl patches are not for treating mild or occasional pain or pain from surgery. <https://www.drugs.com> (last visited March 11, 2019).

who assessed his pain as 10/10, reported a history of severe symptoms in the neck, radiating down the upper extremities causing numbness in the hands, and severe pain in the lower back, radiating down the left leg to the left foot. (AR 449). On examination, Plaintiff was tender over the cervical spine with limited range of motion in all directions, stinging sensation down his bilateral arms during rotation, hypoactive reflexes at both wrists, decreased sensation at C6 and C7, locally tender in the lumbar spine, right-sided lumbar scoliosis with mildly right-sided rib hump palpable, limited range of motion in the lumbar spine, positive root tension in the lower extremities, and hypoactive knee and ankle reflexes. (AR 449). An MRI of the cervical spine revealed severe degenerative disc disease at C4-5, C5-6 and C6-7, causing bilateral foraminal stenosis. (AR 449, 451; see id. 536-37). An MRI of the lumbar spine found degenerative disc disease from L1 through S1 with foraminal stenosis on both the left and right sides. (AR 449; see id. 538-39). Dr. Puri diagnosed degenerative disc disease C4-C7 with radiculopathy in both arms and degenerative scoliosis at L3-S1, and recommended anterior cervical discectomy and fusion from C4-C7. (AR 450).

Dr. Puri performed an anterior cervical discectomy and fusion on October 14, 2016. (AR 442-44). On October 26, Plaintiff reported residual pain in the back of his neck and in the lumbar spine. (AR 447). On examination, Plaintiff had marked limitation of motion in the cervical spine, numbness in hands, and tenderness and reduced range of motion in the lumbar spine. (AR 447). Dr. Puri diagnosed status post anterior cervical fusion from C4-C7 and

degenerative disc disease in the lumbar spine with radicular pain in both legs, recommended physical therapy for Plaintiff's neck and lumbar spine surgery, and continued pain medications "as nothing else seems to help." (AR 447). Dr. Puri opined that Plaintiff would be unable to work for at least twelve months. (AR 447).

On November 7, 2016, Dr. Puri completed a medical opinion re: ability to do work-related activities (physical). (AR 310-12). Dr. Puri concluded that Plaintiff was unable to lift or carry ten pounds, could sit, stand, or walk less than two hours in an eight-hour workday, must change positions every fifteen minutes, and should lie down every three four hours. (AR 310-11). Due to Plaintiff's status post cervical fusion and degenerative disc disease in the lumbar spine, Plaintiff is unable to twist, stoop, crouch, or climb. (AR 311). Because of his neck surgery and radiation of pain to both hands, causing numbness and weakness, Plaintiff's ability to reach, handle, finger, feel, and push/pull are limited. (AR 311). Plaintiff should avoid all exposure to environmental factors. (AR 312). Dr. Puri noted that Plaintiff needs a cane to ambulate, needs to elevate legs to 90°, and is unable to kneel or balance. (AR 312). He opined that Plaintiff would likely miss more than three days a month due to his impairments. (AR 312). On November 16, Dr. Puri reiterated that Plaintiff would be unable to work for at least twelve months. (AR 317).

An ALJ must take into account all medical opinions of record. 20 C.F.R. §§ 404.1527(b), 416.927(b). The regulations "distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995), as amended (Apr. 9, 1996). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing [(nonexamining)] physician's." Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); accord Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014). "The weight afforded a non-examining physician's testimony depends 'on the degree to which they provide supporting explanations for their opinions.'" Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1201 (9th Cir. 2008) (quoting 20 C.F.R. § 404.1527(d)(3)).

The medical opinion of a claimant's treating physician is given "controlling weight" so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). "When a treating doctor's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, and consistency with the record." Revels v.

Berryhill, 874 F.3d 648, 654 (9th Cir. 2017); see also 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). Greater weight is also given to the "opinion of a specialist about medical issues related to his or her area of specialty." 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5).

"To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." Id.; see also Reddick, 157 F.3d at 725 (the "reasons for rejecting a treating doctor's credible opinion on disability are comparable to those required for rejecting a treating doctor's medical opinion."). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017) (citation omitted). "When an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'" Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007). Additionally, "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." Lester, 81 F.3d at 831 (emphasis in original).

13

Finally, when weighing conflicting medical opinions, an ALJ may reject an opinion that is conclusory, brief, and unsupported by clinical findings. Bayliss, 427 F.3d at 1216; Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).

The ALJ gave Dr. Puri's opinion "little weight":

> [Dr. Puri] states that [Plaintiff] has been disabled since 2006, but did not see [Plaintiff] until July 2016. Furthermore, as noted above, there is no evidence in the record prior to 2012. Additionally, the objective medical evidence, as discussed thoroughly above, does not support such extreme limitations, including any requirement for a cane.

(AR 25) (citation omitted).

The ALJ properly gave Dr. Puri's opinion less weight because it was based on only a few visits. (AR 25). "When a treating doctor's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, and consistency with the record." Revels, 874 F.3d at 654. Plaintiff began treating with Dr. Puri in July 2016. (AR 449). Four months later, after performing cervical discectomy and fusion, Dr. Puri submitted his medical opinion. (AR 310-12). Generally, more weight is given to a treating physician's opinion when she has obtained a longitudinal

14

picture of her patient's impairment. 20 C.F.R. §§ 404.1527(c)(2)(i) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion."), 416.927(c)(2)(i) (same). Thus, while the ALJ cannot reject Dr. Puri's opinion based on not treating Plaintiff prior to July 2016, the ALJ may properly give the opinion less weight.[6]

Nevertheless, after a thorough review of the administrative record, the Court finds that the ALJ's other reasons for rejecting Dr. Puri's opinion were not supported by substantial evidence. First, the Court disagrees with the ALJ's characterization of the record. Contrary to the ALJ's assertion (AR 23), Plaintiff's examinations were not "largely unremarkable." Indeed, many of the records cited by the ALJ indicate otherwise. A physical examination in November 2013 indicated a positive straight leg raise bilaterally and multilevel degenerative disk disease. (AR 337). In July 2014, Plaintiff exhibited decreased range of motion in his lumbar spine. (AR 383). Similarly, at his consultative examination in January 2015, Plaintiff had significant reduced range of motion in his lumbar spine: flexion was 30° (normal is 60°), extension 10° (normal is 25°), side bending 15° (normal is

---

[6] The ALJ accurately notes that there is no evidence in the record prior to 2012. (AR 25). However, Plaintiff does not dispute the ALJ's conclusion that he was not under a disability prior to June 30, 2009, his date last insured. (AR 19). Thus, the remaining issue is whether Plaintiff is disabled with respect to his SSI application, which looks back only to the application date: October 2, 2014.

25°), and rotation 30° (normal is 80°).[7] (AR 393); see <www.livestrong.com/article/257162-normal-human-range-of-motion/> (last visited March 11, 2019) (describing normal range of motion). In September 2015, Plaintiff presented with an antalgic gait, tenderness in paraspinal muscles, increased pain with flexion and extension of the spine, straight-leg test positive on left side, and tenderness in left lower quadrant. (AR 399-400). In October 2015, palpation of the thoracic and lumbar faces, lumbar intervertebral spaces, and bilateral sacroiliac joints revealed "severe pain." (AR 479). Range of motion of the lumbar spine was "decreased with severe pain," along with "severe" palpable trigger points in the muscles of the lower back. (AR 479). In March 2016, Plaintiff had moderate difficulty transferring from the chair to standing and from standing to the examination table. (AR 524). He exhibited reduced range of motion, hindered secondarily to pain. (AR 524). In May 2016, Plaintiff was diagnosed with chronic back and neck pain and referred for surgery. (AR 510-12).

The Court also disagrees with the ALJ's view of the efficacy of Plaintiff's pain medications. (AR 23). The ALJ found that Plaintiff has been offered but "does not generally or regularly[ ] take pain medications or has not been compliant with medications." (AR 23) (citation omitted). The evidence does indicate that Plaintiff was not always compliant with his medications. (AR 329, 391-92, 429-30, 413, 452, 544. However, these same records

---

[7] The ALJ inexplicably found the CE's examination "largely unremarkable." (AR 24).

indicate that Plaintiff had developed allergies to opioids and other strong pain medications. (AR 402, 408, 429-30, 458, 543). Further, Plaintiff has a "high tolerance" to pain medications, indicating that even opioid medicines were largely ineffective. (AR 329). While Plaintiff's medications do provide "some benefit," as noted by the ALJ (AR 23), even when compliant Plaintiff still endures significant pain, which is aggravated by physical activity and movement. (AR 398, 400, 402-03, 407-08). Indeed, because the pain medications were largely ineffective, Plaintiff underwent cervical fusion surgery and has been recommended for lumbar spine surgery. (AR 447). "[A]n ALJ may not pick and choose evidence unfavorable to the claimant while ignoring evidence favorable to the claimant." Cox v. Colvin, 639 F. App'x 476, 477 (9th Cir. 2016) (citing Ghanim v. Colvin, 763 F.3d 1154, 1164 (9th Cir. 2014)).

Second, Dr. Puri's opinion is supported by his own objective examinations. Even if a treating doctor's opinion is not controlling, the ALJ must consider the extent to which the opinion is supported by clinical and diagnostic examinations in determining the weight to give the opinion. Revels, 874 F.3d at 654; 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). Prior to Plaintiff's cervical spine surgery, Dr. Puri noted tenderness over the cervical spine with limited range of motion in all directions, stinging sensation down Plaintiff's bilateral arms during rotation, hypoactive reflexes at both wrists, decreased sensation at C6 and C7, tenderness in the lumbar spine, right-sided lumbar scoliosis with mildly right-sided rib hump palpable, limited range of motion

in the lumbar spine, positive root tension in the lower extremities, and hypoactive knee and ankle reflexes. (AR 449). Further, MRIs indicated severe degenerative disc disease with bilateral foraminal stenosis in the both the cervical and lumbar spine. (AR 449, 451, 536-39). Following surgery, Dr. Puri found "marked limitation of movement in the cervical spine," with continued symptoms of numbness in Plaintiff's hands, and "limited range of motion" in the lumbar spine. (AR 447). Dr. Puri's opinion is further supported by other objective evidence in the record. The consultative examination found significant tenderness to palpation at the lumbosacral junction and left sacroiliac joint and reduced range of motion in the lumbar spine. (AR 392-93). Other examinations consistently noted antalgic gait and reduced range of motion. (AR 403, 408, 424, 483).

Finally, giving the State agency consultants' opinions "some weight" (AR 25) is problematic given that the they did not have the opportunity to review Dr. Puri's opinion. In January and April 2015, the consultants opined that Plaintiff was capable of a full range of heavy work. (AR 72-74, 84-85, 98-99, 110-11). Dr. Puri's examinations and opinion were not completed until November 2016 (AR 310-12), well after the consultants submitted their conclusions. Indeed, much of the medical record was submitted subsequent to the State agency consultants determining that Plaintiff was capable of heavy work. (See AR 429-626). For example, in October 2015, Plaintiff's range of motion of the lumbar spine was "decreased with severe pain," along with "severe" palpable trigger points in the muscles of the lower back. (AR

479). In March 2016, Plaintiff exhibited reduced range of motion, hindered secondarily to pain. (AR 524).

In sum, the ALJ failed to provide specific and legitimate reasons for rejecting Dr. Puri's opinion. On remand, the ALJ shall reevaluate the weight to be afforded Dr. Puri's opinion.

**B. Other Issues**

Plaintiff also argues that the ALJ failed to fully develop the record and to properly consider the applicability of Listing 1.04. (Dkt. No. 18 at 7-10). However, it is unnecessary to reach Plaintiff's arguments on these grounds, as the matter is remanded for the alternative reasons discussed at length in this Order. Nevertheless, if the ALJ finds appropriate reasons for not giving Dr. Puri's opinion controlling weight, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. After proper consideration of Dr. Puri's opinion, the ALJ shall reconsider whether Plaintiff meets the requirements of Listing 1.04. If necessary, the ALJ shall consult a medical expert to reconcile the record evidence and various medical opinions.

**VI.**

**CONCLUSION**

Accordingly, IT IS ORDERED that Judgment be entered REVERSING the decision of the Commissioner and REMANDING this matter for

further proceedings consistent with this decision.  IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED:  March 18, 2019

/S/
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS OR ANY OTHER LEGAL DATABASE.**